IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GREGORY A. SABO, | ) | CASE NO. 1:06 CV 2723 |
| | ) | |
| Plaintiff, | ) | JUDGE KATHLEEN M. O'MALLEY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the application of the plaintiff, Gregory Sabo, for disability insurance benefits.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Sabo had severe impairments consisting of degenerative arthritis and disc disease of the lumbar spine.[1]  The ALJ determined that Sabo had the following residual functional capacity:

> [T]he claimant has the exertional residual functional capacity to lift up to fifty (50) pounds occasionally and to frequently lift and/or carry up to twenty-five (25) pounds.  He can also push and pull within these weight restrictions. Claimant can sit, stand and walk at least six (6) [hours] each during the course of an eight-hour workday.  From the nonexertional standpoint, the claimant is unable to perform work that requires more than occasional climbing ladders, ropes or scaffolds, but he can frequently climb ramps and/or stairs.  He can occasionally balance, stoop and crouch and frequently kneel or crawl.[2]

---

[1] Transcript ("Tr.") at 18.

[2] *Id.* at 21.

The ALJ decided that the above-quoted residual functional capacity rendered Sabo unable to perform his past relevant work.[3]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Sabo could perform.[4]  The ALJ, therefore, found Sabo not under a disability.[5]

Sabo asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record.  Specifically, he asserts four issues for decision:

- Whether the ALJ's finding that Sabo had the residual functional capacity to perform medium work with some postural limitations is supported by substantial evidence.

- Whether the ALJ accurately assessed the opinions of Sabo's treating physicians pursuant to SSR 96-5p and Sixth Circuit case law.

- Whether the ALJ failed to apply the proper legal standards regarding disabling pain under *Duncan v. Secretary of Health and Human Services*.[6]

- Whether the ALJ accurately assessed Sabo's credibility pursuant to SSR96-7p.

I conclude that the ALJ properly applied the legal standards for analyzing pain as a cause of disability but that the residual functional capacity finding does not have the support

---

[3] *Id.* at 24.

[4] *Id.* at 25.

[5] *Id.*

[6] *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847 (6th Cir. 1986).

of substantial evidence for want of a proper expert opinion as to how Sabo's impairments translate into work-related limitations or capabilities.  I, therefore, recommend that the Court reverse the decision of the Commissioner denying the application for disability insurance benefits and remand the case for further proceedings.

## The Medical Evidence

Sabo claims an onset date of July 1, 2003.[7]  Shortly after that time he came under the care of Edward Carrillo, M.D., his primary care physician.[8] Dr. Carrillo diagnosed him with chronic low back pain and degenerative arthritis of the lumbar spine.[9]

Dr. Carrillo maintained a treating relationship from July of 2003 through April of 2005, according to the records in the transcript.[10]  His office notes are cryptic and contain notations primarily of medications prescribed.[11]  There are references to "degenerative

---

[7] Tr. at 48.

[8] *Id.* at 155.

[9] *Id.* at 146.  Before the onset date, Sabo had treated with Gregory Brandt, D.O., a primary care physician (Tr. at 118-25), and James Napier, M.D., a neurologist (Tr. at 110-17).  Both had diagnosed degenerative disc disease (Tr. at 112 and 121).  According to the medical records in the transcript, Sabo last saw Dr. Brandt on October 4, 2002 (Tr. at 118) and Dr. Napier on April 19, 2000 (Tr. at 110).

[10] *Id.* at 270-74.

[11] *Id.*

arthritis lumbar spine,"[12] "chronic back pain/degenerative arthritis,"[13] and "legs and back aching."[14]

Dr. Carrillo completed several assessment forms that appear in the transcript.  The first was completed on August 19, 2003, shortly after he began treating Sabo.[15]  He diagnosed Sabo as having "chronic low back pain history.  History of degenerative arthritis lumbar spine."[16]  He reported no sensory deficits, muscle weakness, reflex abnormalities, muscle spasms, muscle atrophy, or symptoms of radiculopathy.[17]  He did note decreased flexion of the lumbar spine to 70° and decreased extension to 5°.[18]

In a medical source statement completed on April 26, 2004, Dr. Carrillo again referenced "chronic back pain – lumbar spine degenerative arthritis."[19]  That statement opined that Sabo had various exertional limitations, including standing and walking for no more than 15 minutes at a time,[20] standing no more than two hours in an eight-hour day,[21]

---

[12] *Id.* at 274.

[13] *Id.*

[14] *Id.*

[15] *Id.* at 153.

[16] *Id.* at 155.

[17] *Id.* at 156.

[18] *Id.*

[19] *Id.* at 227, 230, and 231.

[20] *Id.* at 227.

[21] *Id.*

sitting no more than 30 minutes at a time,[22] sitting no more than four hours in an eight-hour day,[23] lifting one to five pounds frequently,[24] and lifting six to ten pounds occasionally.[25]  On the same date, Dr. Carrillo also completed a Pain Questionnaire.[26]  In that questionnaire, he described Sabo's subjective complaints as "chronic low back pain."[27]  In response to a question regarding the objective and clinical findings supporting Sabo's complaints, he replied "patient presented to my office 7-03 with history of chronic low back pain."[28]

Dr. Carrillo did another assessment based on a last examination date of July 12, 2004.[29]  The exertional limitations indicated therein were substantially similar to those in the April 2004 report.[30]  He did not respond to the question on the form "[w]hat observations and/or medical evidence led to your findings in G1-G4 [exertional limitations]?"[31]

The transcript contains the reports of x-rays and an MRI taken during the relevant time period.  The x-ray taken on July 3, 2003, disclosed hypertrophic spurring at L3 through

---

[22] *Id.* at 228.

[23] *Id.*

[24] *Id.* at 229.

[25] *Id.*

[26] *Id.* at 231.

[27] *Id.*

[28] *Id.*

[29] *Id.* at 273-76.

[30] *Id.* at 276.

[31] *Id.*

L5.[32]  The radiologist concluded that Sabo had minimal degenerative changes of the lumbosacral spine.[33]  The MRI, taken on May 17, 2005, disclosed degenerative loss of disc heights at L3-L4.[34]  There was mild bulging annulus fibrosis but no neural compromise.[35] Neural foramina were widely patent, and the remainder of the vertebral bodies, intervertebral discs, and posterior elements were unremarkable.[36]  The spinal cord was normal in size and signal intensity.[37]

Sabo made two emergency room visits related to his lower back pain.  On July 3, 2003, he presented at the ER with low back pain and some radiation of pain with numbness into the left leg.[38]  Upon examination, the physician noted bilateral muscle spasms at L4-L5.[39]  Leg lifts on both sides were negative for pain.[40]  Deep tendon reflexes were

---

[32] *Id.* at 225.

[33] *Id.*

[34] *Id.* at 256.

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.* at 213.

[39] *Id.* at 212.

[40] *Id.*

in tact.[41]  He exhibited no paresthesias.[42]  He was x-rayed and the finding of minimal degenerative changes was reviewed with him.[43]

The second emergency room visit occurred on February 3, 2005.[44]  Sabo complained of low back pain, inability to sleep at night, and leg numbness.[45]  He did not complain of radiation of pain to the low legs.[46]  His back was tender at L2-L3,[47] but he had negative straight leg raises and normal reflexes.[48]  The doctor noted that flexion and extension of the lumbar spine was limited, but he did not quantify the limitation.[49]  He was released with instructions to see his doctor for a pain clinic and physical therapy referral.[50]

A state agency physician did a residual functional capacity assessment based on a records review only on September 4, 2003.[51]  It appears that the records available at the time were Dr. Carrillo's report of August 19, 2003 and some records from the Ashtabula County

---

[41] *Id.*

[42] *Id.*

[43] *Id.* at 213.

[44] *Id.* at 233.

[45] *Id.*

[46] *Id.* at 235.

[47] *Id.* at 236.

[48] *Id.*

[49] *Id.*

[50] *Id.* at 237.

[51] *Id.* at 150-54.

Medical Center.[52]  This assessment opined that Sabo was capable of medium work with certain postural limitations.[53]

At the hearing before the ALJ, Sabo testified that he had ongoing low back pain radiating to the left leg.[54]  To sleep, he needed to lie in the fetal position with a pillow under his right leg.[55]  He estimated that he could stand or walk only 15-20 minutes without interruption, sit for one-half hour without interruption, and lift only five pounds frequently.[56]  He stated that he took prescription medication, Percocet and Relafen, for the pain, which caused fatigue and the need to nap one-and-a-half hours a day.[57]

## Analysis

### A.    Applicable law

### 1.    Standard of review

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

---

[52] *Id.* at 34.  The agency's letter of September 26, 2003, states that the decision to deny benefits was based on "Edward Carrillo MD report received 8/25/2003" and "Ashtabula Co. Med. Ctr. report received 09/09/2003."  (Tr. at 34.)  Dr. Carrillo's report dated August 19, 2003 (Tr. at 155-56) and the records of the ER visit at Ashtabula County Medical Center in July of 2003 (Tr. at 211-17) are probably the records referred to, although this is not clear from the transcript.

[53] *Id.* at 151-52.

[54] *Id.* at 318.

[55] *Id.* at 325.

[56] *Id.* at 329.

[57] *Id.* at 321-23.

Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[58]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2.   *Pain as the cause of disability*

When a claimant presents pain as the cause of disability, as here, the decision of the Sixth Circuit in *Duncan v. Secretary of Health and Human Services*[59] provides the proper analytical framework.  The court in *Duncan* established the following test:

[t]here must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.[60]

---

[58] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[59] *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847 (6th Cir. 1986).

[60] *Duncan*, 801 F.2d at 853.

Under the first prong of this test, the claimant must prove by objective medical evidence the existence of a medical condition as the cause for the pain.  Once the claimant has identified that condition, then under the second prong he or she must satisfy one of two alternative tests – either that objective medical evidence confirms the severity of the alleged pain or that the medical condition is of such severity that the alleged pain can be reasonably expected to occur.[61]

Objective medical evidence of pain includes evidence of reduced joint motion, muscle spasm, sensory deficit, or motor disruption.[62]  The determination of whether the condition is so severe that the alleged pain is reasonably expected to occur hinges on the assessment of the condition by medical professionals.[63]  Both alternative tests focus on the claimant's "alleged pain."[64]  Although the cases are not always clear on this point, the standard requires the ALJ to assume arguendo pain of the severity alleged by the claimant and then determine if objective medical evidence confirms that severity or if the medical condition is so bad that such severity can reasonably be expected.

A claimant's failure to meet the *Duncan* standard does not necessarily end the inquiry, however.  As the Social Security Administration has recognized in a policy interpretation

---

[61] *Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994).

[62] *Id.* at 1037 (quoting 20 C.F.R. 404.1529(c)(2)).

[63] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 528, 531 (6th Cir. 1997).

[64] *Duncan*, 801 F.2d at 853.

-10-

ruling on assessing claimant credibility,[65] in the absence of objective medical evidence sufficient to support a finding of disability, the claimant's statements about the severity of his or her symptoms will be considered with other relevant evidence in deciding disability:

> Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.[66]

The regulations also make the same point.

> We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled.  However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work ... solely because the available objective medical evidence does not substantiate your statements.[67]

Where the objective medical evidence does not substantiate the claimant's subjective complaints, the ALJ must pass on the credibility of the claimant in making those complaints.[68]  The ALJ's findings as to credibility are entitled to deference because he has the opportunity to observe the claimant and assess her subjective complaints.[69]

---

[65] Social Security Ruling (SSR) 96-7p, Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. 34483 (July 2, 1996).

[66] *Id.* at 34484.

[67] 20 C.F.R. § 416.929(c)(2).

[68] *Walters*, 127 F.3d at 531.

[69] *Buxton*, 246 F.3d at 773.

The regulations set forth factors that the ALJ should consider in assessing credibility. These include the claimant's daily activities; the location, duration, frequency, and intensity of the pain;  precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; and treatment or measures, other than medication, taken to relieve pain.[70]  If  the ALJ rejects the claimant's complaints as incredible, he must clearly state his reasons for doing so.[71]

As a practical matter, in the assessment of credibility, the weight of the objective medical evidence remains an important consideration.  The regulation expressly provides that "other evidence" of symptoms causing work-related limitations can be considered if "consistent with the objective medical evidence." [72]  Where the objective medical evidence does not support a finding of disability, at least an informal presumption of "no disability" arises that must be overcome by such other evidence as the claimant might offer to support his claim.

The specific factors identified by the regulation as relevant to evaluating subjective complaints of pain are intended to uncover a degree of severity of the underlying impairment not susceptible to proof by objective medical evidence.  When a claimant presents credible evidence of these factors, such proof may justify the imposition of work-related limitations

---

[70] 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii).

[71] *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).

[72] 20 C.F.R. § 404.1529(c)(3).

beyond those dictated by the objective medical evidence.  The discretion afforded by the courts to the ALJ's evaluation of such evidence is extremely broad.

Unlike the requirement that the ALJ state good cause for discounting the opinion of a treating source, the regulation on evaluating a claimant's subjective complaints contains no express articulation requirement.  The obligation that the ALJ state reasons for rejecting a claimant's complaints as less than credible appears to have its origin in case law.[73]  The Social Security Administration has recognized the need for articulation of reasons for discounting a claimant's credibility in a policy interpretation ruling.

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.[74]

The strong statement from the administrative ruling quoted above constitutes a clear directive to ALJs to pay attention to giving reasons for discounting claimant credibility.  An ALJ in a unified statement should express whether he or she accepts the claimant's allegations as credible and, if not, explain the finding in terms of the factors set forth in the regulation.[75]  The ALJ need not analyze all seven factors identified in the regulation but

---

[73] *Felisky*, 35 F.3d at 1036; *Auer v. Sec. of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987).

[74] SSR 96-7p, 61 Fed. Reg. at 34484.

[75] 20 C.F.R. § 404.1529(c)(3).

should provide enough assessment to assure a reviewing court that he or she considered all relevant evidence.[76] The articulation should not be conclusory;[77] it should be specific enough to permit the court to trace the path of the ALJ's reasoning.[78]

### 3.    *Weight to be afforded to the opinion of a treating source*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[79]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[80]

---

[76] *Blom v. Barnhart*, 363 F. Supp. 2d 1041, 1054 (E.D. Wisc. 2005).

[77] SSR 96-7p, 61 Fed. Reg. at 34384.

[78] *Blom*, 363 F. Supp. 2d at 1054.

[79] 20 C.F.R. § 404.1527(d)(2).

[80] *Id.*

-14-

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[81] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[82]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[83] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[84] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[85] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[86]

In *Wilson v. Commissioner of Social Security*,[87] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in

---

[81] *Schuler v. Comm'r of Soc. Sec.*, 109 Fed.Appx. 97, 101 (6th Cir. 2004).

[82] *Id.*

[83] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[84] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[85] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[86] *Id.* at 535.

[87] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

the context of a disability determination.[88]  The court noted that the regulation expressly contains a "good reasons" requirement.[89]  The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[90]

The opinion in *Wilson* sets up a three-part requirement for articulation against which an ALJ's opinion failing to assign controlling weight to a treating physician's opinion must be measured.  First, the ALJ must find that the treating source's opinion is not being given controlling weight and state the reason(s) therefor in terms of the regulation – the absence of support by medically acceptable clinical and laboratory techniques and/or inconsistency with other evidence in the case record.[91]  Second, the ALJ must identify for the record evidence supporting that finding."[92]  Third, the ALJ must determine what weight, if any, to

---

[88] *Id.* at 544.

[89] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[90] *Id.* at 546.

[91] *Wilson*, 378 F.3d at 546.

[92] *Id.*

give the treating source's opinion in light of the factors listed in 20 C.F.R. § 404.1527(d)(2).[93]

An ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight.  In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment.  Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

### 4.    *Translating impairments into work-related capabilities on limitations*

Ultimately, at step four of the sequential evaluation process, the ALJ must determine how the claimant's severe impairments translate into work-related capabilities or limitations.[94]  This is the residual functional capacity finding against which the claimant's ability to perform his or her past relevant work, or other job existing in significant numbers locally or nationally, is gauged.[95]

Critical to this residual functional capacity finding are residual capacity assessments done by medical sources such as treating physicians, consultative examining physicians, medical experts who testify at hearings before the ALJ, and state agency physicians who reviewed the claimant's medical records.[96]  In making the residual functional capacity

---

[93] *Id.*

[94] *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2005) (*en banc*).

[95] *Id.*

[96] 20 C.F.R. §§ 404.1513 and 404.1545(a)(3).

finding, the ALJ may not interpret raw medical data in functional terms.[97]  The District Judge in *Rohrberg v. Apfel*[98] appropriately explained the limitations on the ALJ's ability to interpret medical data and the importance of medical opinions regarding capabilities and limitations to the residual functional capacity finding:

> An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.  Where the "medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567(a) ... [the Commissioner may not] make the connection himself."
>
> In this case, the ALJ determined Rohrberg's RFC on a disbelief of the bare medical findings in her doctors' reports as well as Rohrberg's testimony.  The ALJ failed to refer to – and this Court has not found – a proper, medically determined RFC in the record.  Consequently, the Court concludes that there was not substantial evidence to support the ALJ's RFC determination.[99]

To be sure "where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physicians's assessment."[100]  But, as Judge Richard Posner of the Seventh Circuit warned in *Schmidt v. Sullivan*,[101] "[t]he medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of lawyers who apply them.

---

[97] *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

[98] *Rohrberg v. Apfel*, 26 F. Supp. 2d 303 (D. Mass. 1998).

[99] *Id.* at 311 (citations omitted).

[100] *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1996).

[101] *Schmidt v. Sullivan*, 914 F.3d 117 (7th Cir. 1990).

-18-

Common sense can mislead; lay intuitions about medical phenomenon are often wrong."[102]
When a claimant has sufficiently placed his or her functional inability at issue, "the ALJ must
measure the claimant's capabilities, and to make that measurement, an expert's RFC
evaluation is ordinarily essential...."[103]

Although a non-examining physician's opinion may be accepted over that of an
examining physician, the non-examining physician must clearly state why his opinion differs
from that of the examining physician.[104]

**B.    The ALJ applied the proper legal standards regarding disabling pain and, in doing so, accurately assessed the opinion of Dr. Carrillo and Sabo's credibility.**

As explained above, the issues regarding the assessment of the opinion of the treating
physician, Dr. Carrillo, and the assessment of Sabo's credibility are encompassed within the
application of the analytical framework for disabling pain.  For the reasons set forth below,
I recommend holding that the ALJ properly applied the standards for disabling pain and, in
doing so, properly assessed Dr. Carrillo's opinions and Sabo's credibility.

There is no dispute that the ALJ properly found that Sabo had a severe impairment
that could cause pain – degenerative arthritis and disc disease of the lumbar spine.  The pain
analysis, therefore, proceeds to whether there is objective medical evidence to confirm the
severity of the alleged pain.  Some medical evidence does exist.  In August of 2003,

---

[102] *Id.* at 118.

[103] *Manso-Pizzaro*, 76 F.3d at 17.

[104] *Lyons v. Soc. Sec. Admin.*, 19 F. App'x 294, 302 (6th Cir. 2001).

Dr. Carrillo found decreased flexion and extension of the lumbar spine.[105]  At the same time, however, other objective medical evidence of pain was absent.  He found no sensory deficits, muscle weakness, reflex abnormalities, muscle spasms, muscle atrophy, or symptoms of radiculopathy.[106]  During an emergency room visit on July 3, 2003, the examining physician noted bilateral muscle spasms at L4-L5.[107]  Apparently, however, those spasms had resolved by the time of Dr. Carrillo's examination later that month.  During an emergency room visit on February 3, 2005, the examining physician noted limitations in flexion and extension of the lumbar spine without quantifying those limitations.[108]  There exists in the record, therefore, only minimal objective medical evidence as to severity of the alleged pain.

As to whether Sabo's medical condition was of such severity that it could be reasonably expected to give rise to the alleged pain, x-ray and MRI studies do not document severe lumbosacral degeneration.  The x-ray taken in July of 2003 showed minimal degenerative changes of the lumbosacral spine.[109]  The MRI taken in May of 2005 also disclosed only mild degenerative changes.[110]

The other source of medical evidence documenting a condition of severity such that the alleged pain can reasonably be expected to occur consists of the opinions of Dr. Carrillo.

---

[105] Tr. at 156.

[106] *Id.*

[107] *Id.* at 212.

[108] *Id.* at 236.

[109] *Id.* at 225.

[110] *Id.* at 256.

The ALJ decided that those opinions are not entitled to controlling or any probative weight.[111]  In support of this finding, he observed that Dr. Carrillo's opinions are largely based on the claimant's subjective complaints and are not supported by clinical findings.[112]  After a careful review of Dr. Carrillo's opinions and his office notes, I must conclude that substantial evidence supports the ALJ's assessment.  Dr. Carrillo makes minimal objective findings, and those objective findings made, limited primarily to his report of August 2003, are not consistent with the substantial limitations included in his 2004 assessments.  His office notes are terse and, for the most part, merely note prescriptions given and renewed.  They contain only scattered references to Sabo's lumbar condition and no record of any diagnostic testing.  Neither the notes nor his assessments refer to the x-ray or MRI findings.

The pain analysis moves on, therefore, to credibility.  The ALJ provides an extensive analysis of credibility in his decision.[113]  As stated above, the weight of the objective medical evidence is an important consideration as to credibility.  The ALJ's credibility findings are entitled to deference.  The ALJ need not analyze all factors identified in the regulations in discussing credibility.  A court may not disturb the ALJ's credibility determination absent compelling reason.[114]

---

[111] *Id.* at 21.

[112] *Id.* at 22.

[113] *Id.* at 23-24.

[114] *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

-21-

Although the ALJ's discussion of credibility may not be perfect,[115] it does have support of substantial evidence in the record, and there is no compelling reason to disturb it. The ALJ discusses a number of factors identified in the regulations, and his reasoning has support in the record.

Accordingly, I recommend that the Court conclude that the ALJ's analysis of pain as the cause of disability be affirmed.

**C.      The ALJ's residual functional capacity finding does not have the support of substantial evidence.**

Even though the ALJ properly applied the analytical framework set out by the Sixth Circuit's opinion in *Duncan* and the regulations in analyzing pain, nevertheless, his residual functional capacity finding does not have support of substantial evidence.

Having decided that Dr. Carrillo's residual functional capacity assessments were entitled to no weight whatsoever, the only remaining expert opinion regarding the functional capacity was that supplied by the state agency physician in September of 2003.  This opinion cannot serve as substantial evidence in support of the residual functional capacity finding for several reasons.  First, it is based on very limited medical records.  The state agency physician issued the opinion within several months of Sabo's application based upon one medical report from Dr. Carrillo and the records of an emergency room visit.[116]  The

---

[115] For example, it would have been appropriate to discuss Sabo's testimony regarding the side effects of his medication (Tr. at 321-23).  As explained below, this case is being remanded.  The ALJ should address Sabo's medications and side effects on remand and should question the medical expert about such side effects.

[116] *Id.* at 34.

transcript includes a substantial amount of medical records after that opinion that the state agency physician did not have available to him.  Second, an ALJ cannot rely on the opinion of a non-examining physician over that of an examining physician unless the non-examining physician explains why his position differed from that of the examining physician. Dr. Carrillo's opinions were issued after the state agency physician completed his assessment.  The state agency physician could not, therefore, review and comment on those opinions.

Counsel for the Commissioner makes the argument that two additional years of medical records placed in the transcript after the state agency physician's assessment do not shed any additional light on Sabo's impairments and limitations, and, therefore, the ALJ was free to give the state agency physician's opinion controlling weight.  The state agency physician opined that Sabo was capable of medium work with some postural limitations. Dr. Carrillo opined that Sabo was capable of less than sedentary work.  The ALJ could properly assess Dr. Carrillo's opinions and decide to give them no weight.  Having done so, however, his decision to make a residual functional capacity finding based solely on the state agency physician's premature report and his interpretation of the raw medical data in the transcript was reversible error.

Sabo fairly placed his functional capacity at issue.  The ALJ could not properly determine where Sabo's residual functional capacity fell between medium and less than sedentary without the assistance of an expert's opinion.  He should have had a medical expert testify at the hearing to assist him in interpreting the medical evidence in the record.

## Conclusion

Based on the foregoing, I recommend that the Court reverse the decision of the Commissioner denying Sabo's application for disability insurance benefits and remand the decision for reconsideration of the residual functional capacity finding with the assistance of a medical expert.

Dated:   March 7, 2008                                    s/ William H. Baughman, Jr.
                                                                        United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[117]

---

[117] *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).