## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **GREGORY A. SABO** : | Case No. 1:06cv02723 |
| : | |
| : | **JUDGE KATHLEEN O'MALLEY** |
| Plaintiff, : | |
| v. : | |
| : | **ORDER** |
| **COMMISSIONER** : | |
| **OF SOCIAL SECURITY,** : | |
| : | |
| Defendant. : | |

### I. BACKGROUND.

On April 26, 2006, Administrative Law Judge Mark Carissimi (the "ALJ") denied plaintiff Gregory A. Sabo's ("Plaintiff" or "Sabo") disability claim. Sabo appealed the decision to the Appeals Council, which, on September 28, 2006, denied review. Plaintiff filed the instant action seeking review of the ALJ's decision pursuant to 42 U.S.C. §§ 405(g). The parties briefed the issues and, on March 7, 2008, Magistrate Judge William H. Baughman, Jr. issued a Report and Recommendation ("R&R") (Doc. 25). The R&R recommends that the Commissioner of Social Security's (the "Commissioner") final determination be vacated and that an order for remand be entered. Specifically, the Magistrate Judge found that the ALJ's residual functional capacity ("RFC") finding, "d[id] not have the support of substantial evidence for want of a proper expert opinion as to how Sabo's impairments translate into work-related limitations or capabilities." The Commissioner filed an objection to the R&R on March 20, 2008 (Doc. 26). Sabo did not object to the R&R. For the reasons outlined herein, the Court overrules the Commissioner's objection to the

R&R. Accordingly, the Court **ADOPTS** the conclusions of R&R, the Commissioner's decision is **VACATED**, and this matter is **REMANDED**.

The relevant factual background is set forth in detail in Magistrate Judge Baughman's R&R. The Court adopts that factual recitation and incorporates it into this order. Further expansion of the background supplied by the Magistrate Judge is unnecessary to the Court's resolution of the matter.

## II. DISCUSSION.

### A. Legal Standard

In reviewing claims under the Social Security Act, a district court does not review the matter *de novo*. Instead, a district court is limited to examining the entire administrative record to determine whether the Commissioner's final decision is supported by substantial evidence. See Garner v. Heckler, 745 F.2d 383 (6th Cir. 1984); 5 U.S.C. § 706(2)(E); 42 U.S.C. § 405(g).

"Substantial evidence" is evidence that a reasonable mind would accept to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971). The substantial evidence standard requires more than a scintilla, but less than a preponderance of the evidence. Id. To determine whether substantial evidence exists to support the Commissioner's decision, a district court must not focus, or base its decision, on a single piece of evidence. Rather, a court must consider the totality of the evidence on record. See Allen v. Califano, 613 F.2d 139 (6th Cir. 1980); Hephner v. Mathews, 574 F.2d 359 (6th Cir. 1978).

When dealing with conflicting evidence, a district court generally will defer to the ALJ's findings of fact. To that end, the Sixth Circuit instructs that "[t]he substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decision maker can go either way without interference by the courts."

Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (citing Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984)). Accordingly, for this Court to accept the ALJ's conclusions, it must find only that they are based on competent evidence that a reasonable mind would accept to support those conclusions.

### B. The Plaintiff's Brief on the Merits.

Sabo's Complaint raises four challenges to the proceedings before the ALJ: (1) whether the ALJ's finding that Plaintiff has the RFC to perform medium work with some postural limitations is supported by substantial evidence; (2) whether the ALJ accurately assessed the opinions of Plaintiff's treating physicians; (3) whether the ALJ failed to apply the proper legal standards regarding disabling pain; and (4) whether the ALJ accurately assessed the plaintiff's credibility. As discussed below, only the first challenge maintains any relevance.

### C. The Magistrate Judge's Report and Recommendation.

In the R&R, Magistrate Judge Baughman found that the ALJ properly assessed the opinions of Plaintiff's treating physicians, properly applied the proper legal standards regarding disabling pain, and adequately assessed the plaintiff's credibility. The Court agrees with the Magistrate Judge's findings and conclusions with respect to those three issues. In any event, the parties did not object to the Magistrate Judge's determinations with respect to the foregoing issues and, therefore, have waived their objections. See Howard v. Sec'y of Health & Human Servs., 932 F.2d 505, 507 (6th Cir. 1991).

The Magistrate Judge, however, also found that the ALJ's finding that Sabo had the RFC to perform medium work with some postural limitations was *not* supported by substantial evidence. As a result, the R&R recommends vacating the decision of the Commissioner and remanding the

3

case for reconsideration of the RFC finding with the assistance of a medical expert. The Commissioner's objection to the R&R contends that, (1) the ALJ, and not a medical expert is responsible for determining a claimant's RFC; and (2) an ALJ is vested with discretion regarding when to call upon a medical expert, and need not use a medical expert in every case.

### D.     The Commissioner's Objection

The Commissioner's objection to the Magistrate Judge's determination that the ALJ did not have substantial evidence to support his RFC determination has three subparts: (1) ALJ's are responsible for formulating RFCs; (2) an ALJ has discretion regarding when to call a medical expert, and this was not a case requiring additional medical information. The Commissioner's first objection, that the ALJ is responsible for formulating an RFC is not disputed by the Magistrate Judge's R&R. Thus, the first prong of the Commissioner's argument is inapposite and need not be addressed by the Court. As discussed below, under the circumstances of this case, the Court disagrees with the Commissioner's remaining assertions and, therefore, overrules the Commissioner's objections.

The second prong of the Commissioner's argument contends that the ALJ has discretion regarding when to call a medical expert ("ME") to proffer a functional capacity assessment, and that it was unnecessary to do so here. The Commissioner asserts that section I-2-5-34 of the Agency's Hearings, Appeals and Litigation Law manual ("HALLEX") instructs ALJs on when they "may need to obtain an ME opinion" (section A) and when they *must* obtain an ME opinion (section B). See HALLEX § I-2-5-34. The Commissioner argues that, under section A, there are ten instances when an ALJ *may* need to obtain an ME opinion, and that under section B, there are only three instances where an ALJ *must* obtain a medical expert's opinion, but that none of the mandatory provisions of

4

section B refers to formulating RFCs. Accordingly, the Commissioner argues that the ALJ was not required to obtain a medical expert's opinion in this case when formulating Sabo's RFC.

The Court finds several flaws with the Commissioner's contentions (in addition to its skepticism as to whether the HALLEX manual of litigation practices constitutes binding authority). See Suciu v. Barnhart, 405 F.Supp 2d 874, 880 (M.D. Tenn. 2005) ("It is unclear whether the provisions contained in the HALLEX are legally binding and enforceable on their own in the Sixth Circuit."). First, the Court finds that, under the circumstances of this case, several of the HALLEX guidelines should have suggested to the ALJ that he *may* have needed to obtain an ME's opinion. Notably, HALLEX suggests that an ALJ may need to obtain an ME's opinion where: "[1] the ALJ is determining whether a claimant's impairment(s) meets a listed impairment(s); . . . [2] the ALJ is determining the degree of severity of a claimant's physical or mental impairment; . . . [3] the ALJ has reasonable doubt about the adequacy of the medical record in a case, and believes that an ME may be able to suggest additional relevant evidence;" and, particularly relevant to the instant matter, where "[4] the medical evidence is conflicting or confusing, and the ALJ believes an ME may be able to clarify and explain the evidence or help resolve a conflict; [5] the significance of clinical or laboratory findings in the record is not clear, and the ALJ believes an ME may be able to explain the findings and assist the ALJ in assessing their clinical significance; [6] the ALJ is determining the claimant's residual functional capacity . . ." HALLEX § I-2-5-34. The foregoing list of indicators suggesting when an ALJ may need to obtain an ME opinion, moreover, is written in the disjunctive. Thus, the presence of any *one indicator* is sufficient to suggest that an ALJ may want to obtain additional expert testimony. Here, the potential presence of a multitude of indicators all in one case

5

should have been a strong indication to the ALJ that the testimony of an additional ME would have significantly aided the proper resolution of the matter.

It is true, however, that the foregoing guidelines can be read to suggest that it remains within an ALJ's discretion not to seek an ME, even in the face multiple indications to the contrary. Given the task of calculating an RFC with limited information, much of which is conflicting, however, it is difficult to comprehend the ALJ's decision to proceed without an ME. In short, though the HALLEX manual may not have *mandated* that the ALJ call for an additional medical expert, it certainly counseled him to do so. Thus, though it arguably was within the ALJ's discretion under those particular guidelines to forgo an additional expert, whether that decision was wise in the face of the scant evidence otherwise available to the ALJ here is, as discussed below, something different entirely.

The ALJ's decision to pass on an additional ME reaches the heart of the matter: whether the ALJ's RFC finding is supported by substantial evidence. Indeed, the final subpart of the Commissioner's argument rests on the assertion that, in this case, additional medical information was not required. Indeed, the test is not whether it would have been prudent to call an additional ME, but whether the ALJ could properly determine Sabo's RFC given the limited evidence available (*i.e.*, without more in the record on the point). Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). The key to the matter, therefore, is whether the Septemeber 2003 assessment of a non-treating physician coupled with the ALJ's "commonsense" determination that Sabo did not undergo a "significant medical status change since 2003" is an adequate basis for the RFC finding. (See Def.'s Obj. at 5; R&R at 22-24)

The record here continues well beyond the September 2003 assessment of the state's non-treating physician.  Sabo, and his treating physicians, provide accounts of the adverse progression of his pain and his increased mobility difficulties from at least 2000 through 2005.  In fact, the bulk of the treating physicians' accounts are subsequent to the 2003 opinions of the state's non-treating physicians upon which the ALJ relied.  Thus, the ALJ's reliance on the non-treating physician's assessment not only eschewed the assessment of Sabo's treating physicians, but essentially ignored the entire medical record subsequent to the state physician's records-only review.  While the Magistrate Judge observed it is largely the ALJ's province to determine the weight and credibility of the various physicians' reports, (See R&R, at 10-17) where, as here, the ALJ discounted the bulk of the evidence in the record on the critical question he was resolving, the ALJ ultimately left himself with too little upon which to formulate an RFC.

As noted in the R&R, the report of the state's non-treating expert was based on a records-only review.  Unfortunately, this review arose from a woefully incomplete file.  Critically, the records-only examination conducted by the state's physician came before, (1) approximately thirty encounters between Sabo and his treating physician; (2) as many as three visits to the emergency room relating to Sabo's back pain (one of which was spurred by a lower-back injury); and (3) an MRI which, though showing only "mild" degeneration, revealed that Sabo's disability had progressed from his 2003 X-Ray – the only objective evidence available to the non-treating physician.  In addition, because the non-treating physician's report predated Sabo's treating physician's findings, it was impossible for the non-treating physician to analyze the treating physician's findings and to convey to the ALJ why his opinions differed from those of the examining physician. In the absence of such an explanation, it is difficult for the Court to understand why or

how the ALJ could elevate the remote, non-treating opinions above those of the treating physician. Lyons v. Social Security Admin., 19 Fed. Appx. 294, 302 (6th Cir. 2001) (noting that a non-examining physician's opinion may be accepted over that of an examining physician when the non-examining physician *clearly states the reasons* why his opinions differ).

Given the exceptionally limited record upon which the non-treating physician based his assessment, the timing of the assessment in relation to the relevant date of the ALJ's conclusion, and in the absence of any explanation as to why the non-treating physician's assessment differed from that of the treating physician, the Court finds that the assessment is insufficient to support the ALJ's decision in this case. The presence of a contrary, more recent opinion from a physician with a substantial treating history of Sabo reinforces the notion that it was unreasonable to adopt the non-treating physician's assessment, standing alone, for purposes of determining Sabo's RFC. The Court agrees with the Magistrate Judge's conclusion that the ALJ's determination of Sabo's RFC was not based on substantial evidence. [1]

---

[1] Nor do the ALJ's "commonsense" determinations provide an adequate basis upon which to base the RFC determination in this matter. (See R&R at 17-19.) The Commissioner argues that a "commonsense" determination is permissible here because there is relatively little evidence of physical impairment. The Court finds this argument unavailing. The objection presupposes that the only evidence here is derived from the non-treating physician's assessment. Given the early stage at which that assessment was made, however, it would be manifestly unfair to suggest that it encapsulated the entire record. Stated differently, the Court does not believe an ALJ can fairly use a premature report to suggest that the record contains relatively little evidence of physical impairment and, therefore, permissibly insert his "commonsense" determination in the absence of medical evidence supporting it. It is unsurprising that the non-treating physician's report at issue contained little evidence – it was, after all, grossly premature. Here, the medical evidence as a whole, however, adequately raises the question of Sabo's physical impairment, such that the ALJ cannot substitute his "commonsense" determinations for those of a medical expert.

In sum, while the HALLEX handbook may not have *required* the ALJ to call another ME, the overarching consideration in virtually any ALJ determination remains whether that determination is supported by substantial evidence. Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). This is perhaps why the HALLEX handbook suggests that an ALJ may call an ME to resolve any *one* of the *many* issues present here. Stated differently, there may be instances where it is possible for an ALJ to forgo an additional ME under one (or many) of the circumstances cited in HALLEX § I-2-5-34(A) and still render a decision that is supported by substantial evidence. Upon consideration of the totality of the circumstances of *this matter*, however, the Court agrees with the Magistrate Judge that this ALJ could not render a decision supported by substantial evidence without the assistance of a medical expert.

### III.  CONCLUSION

For the foregoing reasons, the Court finds that the decision of the ALJ finding that Sabo is not "disabled" as that term is defined by the Social Security Act is not supported by substantial competent evidence. As such, the decision of the Commissioner is **VACATED** and the matter is **REMANDED** for proceedings consistent with this Order.

**IT IS SO ORDERED**.

s/Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: March 27, 2008**